Opinión concurrente emitida por el
Juez Presidente Señor Hernández Denton,
a la cual se une la Jueza Asociada Señora Fiol Matta.
Concurrimos con el resultado de la sentencia, pero dife-rimos de sus fundamentos, por no ajustarse al derecho *790 vigente. Específicamente, en la sentencia emitida hoy se aplica incorrectamente el término prescriptivo establecido por este Tribunal en Culebra Enterprises Corp. v. E.L.A., 127 D.P.R. 943 (1991), para instar una reclamación de in-demnización por incautación reglamentaria. Más aún, los criterios esbozados en la sentencia obvian la normativa pautada por el Tribunal Supremo federal en Palazzolo v. Rhode Island, 533 U.S. 606 (2001), que es la aplicable cuando se alega que medió una incautación de la propiedad privada a base de la Enmienda Quinta de la Constitución de Estados Unidos de América. De esa forma, el Tribunal deja pasar una oportunidad para atemperar el término prescriptivo a lo resuelto por el máximo foro federal.
I
En 1996, Plaza de Descuentos, S.E. (Plaza de Descuen-tos) adquirió un terreno por parte de Mueblerías Berrios, Inc. (Mueblerías Berrios), quien a su vez había adquirido la propiedad en 1988 mediante una subasta pública. El predio de terreno —cuya titularidad original era de la Cor-poración de Renovación Urbana y Vivienda (C.R.U.V.) — (1) había sido clasificado por la Junta de Planificación en el 1976 como Distrito “P”, a petición de la C.R.U.V., para des-tinarlo al uso público con el propósito de desarrollo futuro. *791 Esto, pues tenía el propósito de llevar a cabo un desarrollo urbanístico cónsono con la clasificación “P”. Esta clasifica-ción, la cual estaba vigente al momento de Plaza de Des-cuentos adquirir el terreno, conllevaba una restricción a la inversión económica que se podía llevar a cabo en éste, que originalmente fue de $25,000 y posteriormente se aumentó a $35,000.
Así las cosas, Plaza de Descuentos sometió en el 2000 un anteproyecto para el desarrollo de ocho negocios de co-mida cuyo valor total era de $33,400, por lo que se encon-traba en el referido límite de inversión establecido por la clasificación “P”. Este anteproyecto, así como los permisos de construcción, fueron debidamente aprobados por la Ad-ministración de Reglamentos y Permisos (A.R.Pe.), pues la agencia entendió que un desarrollo económico como el pro-puesto en el área se encontraba en los límites de la clasifi-cación “P”.
No obstante, Plaza de Descuentos decidió aumentar el valor de la inversión a $38,000, por lo que le informó a A.R.Pe. sobre este aumento al proyecto aprobado. A.R.Pe., sin embargo, luego de analizar el cambio, decidió revocar los permisos otorgados, ya que el costo de la inversión so-brepasaba el límite establecido en la clasificación “P”.(2)
En desacuerdo con las restricciones impuestas a su solar, en el 2003 Plaza de Descuentos presentó una demanda en la cual alegó que el Estado le había incautado su pro-piedad, pues las restricciones impuestas por la clasifica-ción “P” eliminaron todo uso productivo o beneficio que pu-diera tener su terreno. El foro primario concluyó que sí hubo una incautación y ordenó rezonificar el terreno según su mejor uso comercial. Por su parte, el Tribunal de Ape-laciones revocó ese dictamen y resolvió que la causa de acción de Plaza de Descuentos era inmeritoria, porque ésta *792 se autoinfligió el daño por el cual pretendía obtener resarcimiento. Inconforme, Plaza de Descuentos acude ante nos.
Ante estas circunstancias, en el día de hoy el Tribunal resuelve que la causa de acción de Plaza de Descuentos está prescrita, porque el término prescriptivo para instar una acción de daños por incautación reglamentaria co-menzó a transcurrir en 1976, cuando el Estado clasificó este terreno como “P”. A nuestro juicio, el Tribunal debió resolver que el término prescriptivo comenzó a transcurrir en 1988, cuando Mueblerías Berrios adquirió el terreno por parte del Estado y sufrió las restricciones impuestas por la clasificación “P”. Ello, pues el Estado no puede incautar una propiedad que le pertenece.
En primer lugar, enmarcaremos la controversia en el derecho constitucional aplicable sobre la intervención del Estado con la propiedad privada. Luego, veremos cómo se debe atemperar el término prescriptivo para una acción por daños por incautación reglamentaria con estos precep-tos constitucionales.
II
El derecho a la propiedad privada está concebido como un derecho fundamental del ser humano en nuestra es-tructura constitucional. En efecto, la Constitución del Es-tado Libre Asociado de Puerto Rico prohíbe tomar o peiju-dicar la propiedad privada para un uso público, a menos que no medie el pago de una compensación justa y se cum-pla con el proceso de rigor. Sees. 7 y 9, Art. II., Const. E.L.A., L.P.R.A. Tomo 1. A su vez, aunque con un texto menos abarcador que el de nuestra Carta de Derechos, la Enmienda Quinta de la Constitución de Estados Unidos de América prohíbe que el Gobierno se incaute la propiedad privada para destinarla a un uso público, sin que medie el pago de justa compensación. Enmda. V, Const. E.E. U.U., *793 L.P.R.A. Tomo 1. Véanse, además: W.M. Treanor, The Original Understanding of the Takings Clause and the Political Process, 95 (Núm. 4) Colum. L. Rev. 782, 805-806 (1995); J.L. Sax, Takings and the Police Power, 74 Yale L.J. 36, 61 (1964).
Por lo general, la intervención estatal con la propiedad privada se manifiesta mediante el ejercicio del poder de expropiación forzosa. En Puerto Rico, estas disposiciones constitucionales regulan esa facultad del gobierno estatal, que es consustancial con su existencia e inseparable de su poder político. A.C.T. v. 780.6141m2, 165 D.P.R. 121, 130 (2005); E.L.A. v. Rosso, 95 D.P.R. 501, 536 (1967). No obs-tante, hay acciones gubernamentales respecto a la propie-dad privada que requieren el pago de una compensación, aunque no estén ligadas directamente al poder de expropiación. Se trata, específicamente, de determinacio-nes sobre el ordenamiento y la zonificación de la tierra, así como el control y los usos que se les da a ésta. Estas accio-nes se fundan en el llamado poder de razón de Estado (police power) para promover la salud, la seguridad y el bien-estar de la comunidad. Véanse: Arenas Procesadas, Inc. v. E.L.A., 132 D.P.R. 593, 603 (1993); The Richards Group v. Junta de Planificación, 108 D.P.R. 23, 36-39 (1978).
Como hemos expresado reiteradamente, la tarea de des-lindar el ámbito de ambos poderes no ha sido sencilla, pues no existe una fórmula exacta que demarque su separación. Así, en Puerto Rico este tipo de caso se atiende en función de dos principios elementales: de una parte, el rol primordial de los estados en el control de la tierra y en los dere-chos de propiedad, y de otra parte, el contenido mínimo de garantías que la Constitución de Estados Unidos ha reco-nocido en este contexto.
Por lo tanto, para resolver correctamente la controver-sia de autos primero debe examinarse la normativa que el Tribunal Supremo federal ha pautado al respecto. Véanse: Hampton Development Corp. v. E.L.A., 139 D.P.R. 877, *794 887 — 93 (1996); Arenas Procesadas, Inc. v. E.L.A., supra, págs. 604-607. Véase, además, S.E. Sterk, The Federalist Dimension of Regulatory Takings Jurisprudence, 114 Yale L.J. 203, 270-71 (2004).
A. La Enmienda Quinta de la Constitución de Estados Unidos, supra, impone límites tanto al poder de expropia-ción forzosa como al poder de razón de Estado. En este sentido, se ha resuelto que “aunque la propiedad puede regularse hasta cierto punto, si la reglamentación va de-masiado lejos se considerará como una incautación”. (Tra-ducción nuestra.) Pennsylvania Coal Co. v. Mahon, 260 U.S. 393, 415 (1922). Véase F.I. Michelman, Property, Utility, and Fairness: Comments on the Ethical Foundation of “Just Compensation” Law, 80 Harv. L. Rev. 1165 (1965).
Esencialmente, este criterio requiere sopesar los diver-sos intereses en pugna para decidir si se debe compensar a una persona por incautación reglamentaria. A tales efec-tos, en Penn Central Transportation Co. v. New York City, 438 U.S. 104, 124 (1978), se resolvió que aunque un regla-mento no prohíba todos los usos económicos de cierta pro-piedad, se debe evaluar el carácter de la acción estatal, su impacto económico sobre el propietario y el grado de inter-vención con sus expectativas razonables de inversión, para entonces determinar si ha ocurrido una incautación.
Así, la forma más clara de incautación, sin duda, es aquella en la que el gobierno ocupa físicamente la propie-dad privada para su uso. Es decir, la invasión física de una propiedad por parte del gobierno o de un tercero que actúe con su anuencia, es una incautación per se. Véase Loretto v. Teleprompter Manhattan CATV Corp., 458 U.S. 419, 427 (1982). Del mismo modo, si la reglamentación priva al dueño de todo uso productivo o beneficioso de su propiedad, también se requerirá el pago de una compensación justa. En esencia, semejante reglamentación se trataría análoga-mente como una ocupación física y, por ende, como una incautación per se. Lucas v. South Carolina Coastal Coun *795 cil, 505 U.S. 1003, 1015 (1992); Agins v. City of Tiburón, 447 U.S. 255, 261 (1980).(3)
Para llegar a la conclusión de que hubo una incautación reglamentaria se requiere analizar si existe un “nexo esen-cial” entre la condición impuesta y un interés estatal legítimo. De encontrarse tal vínculo, se debe determinar si la magnitud de los requerimientos guarda una proporción aproximada (rough proportionality) con el impacto que el proyecto tendría en la sociedad y con la necesidad de obra pública. Dolan v. City of Tigard, 512 U.S. 374 (1994); Véase, además, J.J. Alvarez González, Derecho constitucio-nal de Puerto Rico y relaciones constitucionales con los Es-tados Unidos: casos y materiales, Bogotá, Ed. Temis, 2009, pág. 665.
Por otra parte, la persona afectada por una incautación reglamentaria puede solicitar —mediante una acción de “expropiación a la inversa”— que se libere su propiedad de las limitaciones impuestas y que se le compense por los daños sufridos durante el período en el que se le privó de todo uso productivo. La rezonificación no es, pues, un re-medio suficiente en el sentido constitucional. Lutheran Church v. County of Los Angeles, 482 U.S. 304, 319 (1987).
Por otro lado, más recientemente, en Palazzolo v. Rhode Island, supra, pág. 626, se cuestionó una regla muy gene-ralizada que le prohibía a todo adquirente o cesionario de una propiedad impugnar la validez de un reglamento si al momento de la compraventa conocía de su existencia. Esta regla partía de la premisa de que como el derecho de pro-piedad está sujeto a la reglamentación estatal, el gobierno puede definir sus contornos y las expectativas razonables *796 de inversión vinculadas a éste a través de medidas prospectivas. Por consiguiente, conforme a la regla cuestio-nada los que adquirieran un predio de terreno con conoci-miento de las limitaciones existentes no podían reclamar un daño por la pérdida del valor que generaran.
Al invalidar esta regla, el Tribunal Supremo federal re-solvió que una zonificación sumamente restrictiva no deja de ser irrazonable por el mero transcurso del tiempo ni por la transferencia del título. En efecto, una norma contraria le concedería al gobierno inmunidad ante cualquier re-clamo por una incautación reglamentaria, no importa lo irrazonable o extrema que sea la clasificación impugnada. Por lo tanto, en Palazzolo v. Rhode Island, supra, se pautó que el mero hecho de que una persona haya adquirido un predio de terreno, luego de que se aprobara un reglamento urbanístico, no puede impedir que ésta presente una de-manda para cuestionarlo por ser equivalente a una incautación. Pese a la obligatoriedad de esta norma en nuestro ordenamiento, la Sentencia del Tribunal la ignora por completo.
Con esta normativa federal en mente, examinemos su relación con el desarrollo jurisprudencial puertorriqueño al respecto. Específicamente, debemos analizar cómo se atempera el término de prescripción para incoar una ac-ción de indemnización por incautación reglamentaria con la normativa discutida.
B. Según hemos expresado reiteradamente, la pres-cripción obedece a una clara política pública que procura la solución rápida de las reclamaciones presentadas por los ciudadanos, lo cual abona a la estabilidad de las relaciones sociales y a la seguridad en el tráfico jurídico. Santos de García v. Banco Popular, 172 D.P.R. 759 (2007). Así se pre-viene que el Estado proteja indefinidamente los derechos no reclamados por su titular, pues se presume que las ac-ciones meritorias se presentan de inmediato, no se *797 abandonan. J. Puig Brutau, Caducidad, prescripción extin-tivay usucapión, 3ra ed., Barcelona, Ed. Bosch, 1996, págs. 31-33; M. Albaladejo, Derecho Civil, 3ra ed., Barcelona, Ed. Bosch, 1989, Vol. II, pág. 496.
Como es sabido, en Puerto Rico el término prescriptivo de las acciones de responsabilidad civil extracontractual -en las que, precisamente, se enmarcan los reclamos de daños por la incautación reglamentaria de un predio de terrenose computa desde el momento en que el agraviado supo del daño o desde el día cuando pudo ejercitar su acción. Arts. 1868-1869 del Código Civil, 31 L.P.R.A. sees. 5297 — 5298. Véase, además, Culebra Enterprises Corp. v. E.L.A., supra, pág. 955. Asimismo, como regla general, para poder incoar un reclamo por la incautación reglamen-taria de una propiedad el demandante debe acreditar pri-mero su condición de dueño. Esto, pues sólo los poseedores del derecho objeto de la acción gubernamental impugnada pueden exigir la indemnización correspondiente. Véanse: Eastern Enterprises v. Apfel, 524 U.S. 498 (1998); Parella v. R.I. Employees’ Retirement System, 173 F.3d 46, 58 (1er Cir. 1999).
En atención a lo anterior, en Culebra Enterprises Corp. v. E.L.A., supra, pág. 956, resolvimos que el término de prescripción que aplica a las acciones de daños por una incautación reglamentaria es el de un año, contado a partir de que se libere la propiedad de las restricciones impuestas o, como máximo, desde que transcurre el período de re-serva de ocho años establecido por la ley para solicitar esa liberación. Véase 32 L.P.R.A. see. 2923 et seq. Amparado en esta norma, en este caso, el Tribunal resuelve que, como la parcela se reservó para un fin público en 1976, la causa de acción de Plaza de Descuentos estaba prescrita al presen-tar su demanda en el 2003. Esto es, que la causa de acción prescribió en 1984 cuando finalizó el período de ocho años. Discrepamos de esta conclusión. Veamos por qué.
*798 III
Plaza de Descuentos alega que el Estado le incautó re-glamentariamente su propiedad en el momento en el que le revocaron los permisos, pues las restricciones que se impu-sieron en 1976 cuando se clasificó el terreno como “P” le privaron de todo uso productivo o beneficio económico en el terreno. Por su parte, el Procurador General arguye que la causa de acción está prescrita, pues el término de prescrip-ción para ésta comenzó a transcurrir en 1976, cuando el Estado congeló o reservó este predio de terreno para el uso público según le fue peticionado por la C.R.U.V.
Según señalamos en Culebra Enterprises Corp. v. E.L.A., supra, pág. 956, el término para instar una recla-mación de daños por incautación reglamentaria comienza a transcurrir, de ordinario, desde que se libera la propie-dad de las restricciones o, como máximo, después del octavo año de reserva o congelación del terreno. Sin embargo, no se puede aplicar esta norma mecánicamente, como se hace en la Sentencia del Tribunal. En 1976, el titular del terreno clasificado como “P” era la C.R.U.V., que era una corporación pública del Estado, la cual se disponía a llevar a cabo un proyecto acorde con esa clasificación. Ante esa realidad, no cabe hablar de una incautación reglamentaria que haya provocado un daño desde 1976, pues fue el Es-tado, a través de la C.R.U.V., quien utilizó el mecanismo de rezonificación para reservar ese terreno para uso público, cuando ésta era su propietaria. Concluir que el término en controversia comenzó a transcurrir en 1976, implica avalar la teoría de que el Estado, al zonificar un terreno como “P”, se autoprovocó una incautación reglamentaria.
No fue hasta 1988 cuando el Estado le transfirió la titu-laridad del terreno en controversia a Mueblerías Berrios, una entidad privada que deseaba llevar a cabo negocios en el área. Durante los años en que Mueblerías Berrios fue la titular del terreno, la Junta de Planificación le concedió *799 variaciones a los proyectos propuestos, sujeto al debido cumplimiento de varias condiciones acordes con la clasifi-cación “P”. No obstante, Mueblerías Berrios nunca realizó ningún proyecto comercial en ese terreno, por lo que lo vendió en 1996 a Plaza de Descuentos por la suma de $392,000.
Por lo antes dicho, entendemos que el término de la prescripción para incoar la acción de indemnización por incautación reglamentaria en este caso comenzó a transcu-rrir cuando Mueblerías Berrios advino propietaria del te-rreno clasificado como “P”. Fue en 1988 cuando Mueblerías Berrios sufrió los posibles daños por las restricciones que una clasificación “P” le impone a un terreno clasificado como tal. Es en ese momento que comenzó a transcurrir el término prescriptivo de un año a partir de la liberación del terreno por parte del Estado, o, como máximo, un año a partir del octavo año que tiene como límite temporal el Estado para congelar o reservar una propiedad para uso público. Por lo tanto, si el término prescriptivo comenzó en 1988, y la clasificación del terreno continuó siendo “P”, éste finalizó en 1997, un año después de los ocho años máximos que puede utilizar el Estado para congelar o reservar una propiedad privada.
Adviértase que a pesar de que la sentencia del Tribunal concluye que el término prescriptivo comenzó a transcurrir en 1976, reconoce nuestra postura como alternativa en el escolio 3. Ello es muestra de una ambivalencia en el proce-der del Tribunal, lo que seguramente creará confusión en-tre la comunidad jurídica y resultará en detrimento del estado de derecho.
Por otro lado, con su proceder hoy, este Tribunal dejó pasar una oportunidad para atemperar el término pres-criptivo establecido en Culebra Enterprises Corp. v. E.L.A., supra, con la normativa obligatoria pautada por el Tribunal Supremo de Estados Unidos en Palazzolo v. Rhode Island, supra. Específicamente, en la sentencia de este Tri *800 bunal se resuelve que el Estado no debe estar sujeto a responder a una acción nueva e independiente cada vez que la propiedad se transfiere a otro titular o cada vez que se solicita una autorización gubernamental. No obstante, según resolvió el Supremo federal en Pálazzolo v. Rhode Island, supra, el mero hecho de que una persona haya ad-quirido un predio de terreno luego de que se aprobara un reglamento urbanístico, no puede impedir que ésta pre-sente una demanda para cuestionarlo por ser equivalente a una incautación.
Si imbricamos esta normativa al término prescriptivo para acciones de indemnización por incautación reglamen-taria de nuestro ordenamiento, es forzoso concluir que, contrario a lo que preceptúa la sentencia del Tribunal, in-dependientemente de cuántas veces se haya transferido el título de propiedad del terreno durante el término pres-criptivo, un adquirente posterior de la titularidad del bien está tan facultado como su titular al momento de la incau-tación reglamentaria para presentar una acción de este tipo. Ello, claro está, siempre que la acción se inste en el referido período prescriptivo.
En este caso es evidente que el término prescriptivo no terminó en 1984, cuando todavía el Estado era dueño de esos terrenos, sino en 1997, luego de un año a partir del octavo año que el Estado tiene como límite para mantener una propiedad privada congelada para un fin público. Así, Plaza de Descuentos, quien recibió la titularidad del bien con la clasificación “P” en 1996, tuvo aproximadamente un año para presentar una acción por daños a base de una incautación reglamentaria. Al presentar la acción en 2003, es evidente que ya el término prescriptivo para impugnar una clasificación que limita las facultades del titular desde 1988 había finalizado. Por ende, la causa de acción presen-tada por Plaza de Descuentos resulta tardía, según hemos fundamentado.
*801 IV
Según la discusión doctrinal analizada, entendemos que la sentencia emitida por el Tribunal se basa en fundamen-tos erróneos e imprecisos para llegar a la conclusión de que la causa de acción presentada por Plaza de Descuentos está prescrita. Más importante aún, con su proceder el Tribunal se mantiene al margen de la normativa federal apli-cable, cuando se invoca una violación a la Enmienda Quinta de la Constitución de Estados Unidos a base de una incautación reglamentaria en un terreno privado. Por ello, nos vemos obligados a concurrir.

 La Corporación de Renovación Urbana y Vivienda (C.R.U.V.) se creó me-diante la Ley Núm. 88 de 22 de junio de 1957 con el propósito de reorganizar y dirigir los proyectos gubernamentales de vivienda pública y de renovación urbana estable-cidos a partir de 1938. Véase la Exposición de Motivos de la Ley Núm. 88 de 22 de junio de 1957 (1957 Leyes de Puerto Rico 456-458). En su ley habilitadora se esta-bleció que la “Administración [de la C.R.U.V.] deberá consultar a las Comisiones Locales de Planificación respectivas sobre cualquier programa o proyecto local de renovación urbana y vivienda que afecte la respectiva municipalidad”. Art. 1.5 de la Ley Núm. 88, supra, 1957 Leyes de Puerto Rico 459. Por lo tanto, en la creación e implementación de la política pública sobre vivienda pública y renovación urbana en el país, la C.R.U.V. debía trabajar conjuntamente con las correspondientes juntas locales de planificación para llevar a cabo proyectos urbanísticos. Además, es perti-nente mencionar que la C.R.U.V., que se creó como una corporación pública, se ads-cribió al Departamento de Vivienda mediante la Ley Núm. 97 de 10 de junio de 1972 (3 L.P.R.A. see. 441 et seq.), aunque continuó siendo una corporación pública.

 Del expediente se desprende que durante el proceso que comenzó con la notificación de la variación, el municipio de San Juan retiró su endoso al proyecto propuesto y varios grupos vecinales presentaron querellas contra éste.

 No obstante, el hecho de que el reglamento impugnado prohíba sólo algún uso productivo de la propiedad no impide que su dueño reclame el pago de una compensación justa. Ello es así, pues aun cuando el propietario no pueda ampararse en la regla categórica establecida en Apiras v. City of Tiburón, 447 U.S. 255 (1980), y su progenie, puede que prevalezca en un reclamo al amparo del balance de intereses de Penn Central Transportation Co. v. New York City, 438 U.S. 104, 124 (1978). Véase Lucas v. South Carolina Coastal Council, 505 U.S. 1003, 1019 esc. 8 y 1026-1032 (1992).